1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TRACY THOMAS COSTA,                    No.  2:12-cv-2591-EFB

12                Plaintiff,

13        v.                                ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                  Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her application for a period of disability and Disability Insurance

20   Benefits ("DIB") under Title II of the Social Security Act.  The parties' cross-motions for

21   summary judgment are pending.  For the reasons discussed below, plaintiff's motion is denied

22   and defendant's motion is granted.

23   I.    BACKGROUND

24        Plaintiff filed an application for a period of disability and DIB on May 5, 2008, alleging

25   that she had been disabled since November 21, 2006.[1]  Administrative Record ("AR") 130, 249-

26   250.  Plaintiff's application was initially denied on July 2, 2008, and upon reconsideration on

27   _____

28        [1]  Plaintiff subsequently amended her disability onset date, alleging disability since May
     15, 2008.  AR 260.

1   October 16, 2008.  *Id.* at 135-138, 143-147.  On November 18, 2009, March 8, 2010, and July 14,

2   2010, hearings were held before administrative law judge ("ALJ") Peter F. Belli.  *Id.* at 47-130.

3   Plaintiff was represented by counsel at the hearings, at which she testified.  *Id.*  Plaintiff's

4   husband, Thomas Costa, also testified at the July 14, 2010 hearing.  *Id.* at 66-81.

5           On January 27, 2011, the ALJ issued a decision finding that plaintiff was not disabled

6   under sections 216(i) and 223(d) of the Act.[2]  *Id.* at 21-32.  The ALJ made the following specific

7   findings:

8       1.  The claimant meets the insured status requirements of the Social Security Act
            through June 30, 2011.

9

10  _____

11      [2] Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid

12  to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions,
    disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to

13  "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
    1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R.

14  §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The

15  following summarizes the sequential evaluation:

16              Step one:  Is the claimant engaging in substantial gainful
            activity?  If so, the claimant is found not disabled.  If not, proceed

17          to step two.
                Step two:  Does the claimant have a "severe" impairment?

18          If so, proceed to step three.  If not, then a finding of not disabled is

19          appropriate.
                Step three:  Does the claimant's impairment or combination

20          of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
            404, Subpt. P, App.1?  If so, the claimant is automatically

21          determined disabled.  If not, proceed to step four.
                Step four:  Is the claimant capable of performing his past

22          work?  If so, the claimant is not disabled.  If not, proceed to step

23          five.
                Step five:  Does the claimant have the residual functional

24          capacity to perform any other work?  If so, the claimant is not
            disabled.  If not, the claimant is disabled.

25

26  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

27          The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential

28  evaluation process proceeds to step five.  *Id.*

2.  The claimant has not engaged in substantial gainful activity since May 15, 2008, the amended onset date (20 CFR 404.1571 *et seq.*).

    * * *

3.  The claimant has the following severe impairments: oculodentodigital dysplasia, migraines (20 CFR 404.1520(c)).

    * * *

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.156).

    * * *

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently.  The claimant can occasionally push and pull 20 pounds occasionally [sic] and 10 pounds frequently.  The claimant can sit for 8 hours in an 8-hour day, with normal breaks.  The claimant can stand and walk for 6 hours in an 8-hour day, with normal breaks.  The claimant can never climb ladders, ropes, and scaffolds.  The claimant can occasionally stoop, crouch, crawl, and kneel.

    * * *

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

    * * *

7.  The claimant was born on October 8, 1970 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

1    * * *

2

3    11. The claimant has not been under a disability, as defined in the Social Security Act,
     from May 15, 2008, through the date of this decision (20 CFR 404.1520(g)).

4

5    *Id.* at 23-32.

6    Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 16, and on

7    August 21, 2012, the Appeals Council denied review, leaving the ALJ's decision as the final

8    decision of the Commissioner. *Id.* at 1-6.

9    II.   LEGAL STANDARDS

10   The Commissioner's decision that a claimant is not disabled will be upheld if the findings

11   of fact are supported by substantial evidence in the record and the proper legal standards were

12   applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

13   *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

14   180 F.3d 1094, 1097 (9th Cir. 1999).

15   The findings of the Commissioner as to any fact, if supported by substantial evidence, are

16   conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is

17   more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th

18   Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a

19   conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

20   *N.L.R.B.*, 305 U.S. 197, 229 (1938)).

21   "The ALJ is responsible for determining credibility, resolving conflicts in medical

22   testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

23   2001) (citations omitted). "Where the evidence is susceptible to more than one rational

24   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

25   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

26   /////

27   /////

28   /////

1    III.    <u>ANALYSIS</u>

2         Plaintiff argues that the ALJ erred by (1) failing to properly weigh the medical opinions of

3    record, (2) failing to provide clear and convincing reasons for rejecting her testimony; and (3)

4    rejecting lay witness testimony without adequate justification.[3]

5         A.    <u>The ALJ Properly Weighed the Medical Opinions</u>

6         Plaintiff first argues that the ALJ erred by adopting the opinions of non-examining

7    physicians over the opinions from plaintiff's treating physicians.  ECF No. 14 at 8-11.  The

8    weight given to medical opinions depends in part on whether they are proffered by treating,

9    examining, or non-examining professionals.  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

10   Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

11   opportunity to know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d

12   1273, 1295 (9th Cir. 1996).  To evaluate whether an ALJ properly rejected a medical opinion, in

13   addition to considering its source, the court considers whether (1) contradictory opinions are in

14   the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted

15   opinion of a treating or examining medical professional only for "clear and convincing" reasons.

16   *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional

17   may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.

18   *Id.* at 830.  While a treating professional's opinion generally is accorded superior weight, if it is

19   contradicted by a supported examining professional's opinion (*e.g.,* supported by different

20   independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d

21   1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

22   However, "[w]hen an examining physician relies on the same clinical findings as a treating

23   physician, but differs only in his or her conclusions, the conclusions of the examining physician

24   are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

25   _____

26        [3]  Plaintiff also argues that the ALJ erred in relying on her work as an in-home care
     provider to find that she is not disabled.  ECF No. 14 at 16-18.  The ALJ relied on this past work
27   in assessing the credibility of plaintiff's testimony of her inability to work.  Accordingly, this
     argument is addressed below in conjunction with plaintiff's argument that the ALJ failed to
28   provide legally sufficient reasons for rejecting her testimony.

1    In 2007, plaintiff was diagnosed with Oculodentodigital Dysplasia ("ODDD"), AR 531, a

2   genetic condition characterized by congenital anomalies and neurological and cardiac

3   abnormalities, *id*. at 534.  On October 6, 2009, Dr. Yabes, one of plaintiff's treating physicians,

4   completed a form assessing plaintiff's functional limitations.  *Id*. at 772-773.  Dr. Yabes

5   diagnosed plaintiff with chronic migraine headaches, ODDD, and chronic fatigue syndrome.  *Id*.

6   at 772.  During her most recent examination, plaintiff had severe headaches with photophobia-

7   generalized tenderness and 18/18 tender points.  *Id*.  It was Dr. Yabes' opinion that plaintiff could

8   work 1-2 hours a day; lift 5 pounds occasionally; stand for 15-30 minutes at one time; sit for 15-

9   30 minutes at one time; and occasionally bend, stoop, and balance.  Dr. Yabes also opined that

10   plaintiff suffers from severe to extreme pain.  *Id*. at 773.

11    The record also contains the opinion of Dr. Boyd, also one of plaintiff's treating

12   physicians.  *Id*. at 794-795.  Dr. Boyd stated that plaintiff's symptoms included progressive

13   spasticity, myofascial pain, bladder spasticity, migraines, and peripheral neuropathy.  *Id*. at 794.

14   He diagnosed plaintiff with ODDD, leading to progressive neurologic disease.  *Id*.  He stated that

15   ODDD is a "genetic disorder effecting the brain and peripheral nerves, vision, and manifesting

16   with progressive weakness, spasticity and pain."  *Id*.  He also reported that the only treatment

17   available for plaintiff's ODDD was pain and symptomatic management.  *Id*.  Dr. Boyd opined

18   that plaintiff was unable to work; was unable to lift any weight; could stand for 15 minutes at a

19   time; sit for 30 minutes at a time, occasionally bend, stoop, and balance; and would need to

20   frequently elevate her legs.  *Id*. at 794-95.  He further opined that plaintiff suffers from severe

21   pain due to her ODDD, progressive spasticity and "CNS involvement."  *Id*. at 795.

22    The record also contains opinions from three non-examining physicians, Dr. Dann, Dr.

23   Eskander, and Dr. Gross.  On July 1, 2008, Dr. Dann completed a Physical Residual Functional

24   Capacity Assessment.  *Id*. at 632-636.  It was Dr. Dann's opinion that plaintiff had the ability to

25   lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about 6 hours in an 8-

26   hour workday, sit about 6 hours in an 8-hour workday, and push and pull without limitation.  *Id*.

27   at 633.  He also opined that plaintiff did not have any postural, manipulative, visual, or

28   environmental limitations.  *Id*. at 634-635.

6

Dr. Eskander also supplied a Physical Residual Functional Capacity Assessment, which was completed on September 18, 2008.  AR 708-712.  Dr. Eskander opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for at least 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push and pull without limitation; and occasionally climb, stoop, kneel, crouch, and crawl.  *Id*. at 709-710.  It was also Dr. Eskander's opinion that due to plaintiff's migraines, she should avoid concentrated exposure to extreme heat, noise, vibration, fumes and odors.  *Id*. at 711.

Dr. Gross completed a case analysis on July 1, 2008.  *Id*. at 648-650.  Based on his review of the record, Dr. Gross opined that plaintiff maintained the ability to perform the full range of light work as her headaches did not meet the frequency duration and she could physically function within normal limits.  *Id*. at 648-650.

In weighing these medical opinions, the ALJ gave considerable weight to the opinions of Drs. Dann, Eskander, and Gross, while only giving "some weight" to the opinions of Drs. Yabes and Boyd.  *Id*. at 30.  Since Drs. Yabes and Boyd's medical opinions were contradicted by Drs. Dann, Eskander, and Gross' opinions, the ALJ was required to give specific and legitimate reasons for discounting their opinions.

The ALJ explained that he gave less weight to Dr. Yabes' opinion because it was inconsistent with other evidence in the record.  *Id*. at 30.  The ALJ specifically observed that "Dr. Yabes [sic] assessment of the claimant's functional limitations and pain is over and above the claimant's own description of her impairments and pain symptoms.  The claimant testified that she is far more functionally capable than Dr. Yabes reported."  *Id*.  This finding is supported by the record.  Although plaintiff no doubt experiences debilitating pain during episodes of migraines and pain and weakness associated with ODDD, her testimony indicates that with appropriate pain management she retained the functional capacity to perform a number of daily activities.  She testified that she helps get her children ready for school, occasionally prepares meals, goes grocery shopping, occasionally drives a car, and takes her children to the pool to go swimming.  AR 54-56, 116-117.  Plaintiff's ability to perform these activities is inconsistent with the extreme limitations assessed by Dr. Yabes, which included the ability to stand and sit for only

7

15-30 minutes at one time.  Accordingly, the ALJ provided a specific and legitimate reason for according less weight to Dr. Yabes' assessment of plaintiff's capacity to perform work activities. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir. 1999) (an ALJ may reject a treating opinion that is inconsistent with other evidence in the record, including plaintiff's reported daily activities).

The ALJ similarly gave less weight to Dr. Boyd's opinion because his assessed limitations were not consistent with plaintiff's reported daily activities.  As the ALJ observed, Dr. Boyd essentially opined that plaintiff could not maintain any activity.  *See id.* at 30.  Specifically, he opined that plaintiff could perform no work, could not lift any amount of weight, could stand for only 15 minutes at one time, and sit for only 30 minutes at one time.  *Id.* at 794.  Yet plaintiff's reported activities are inconsistent with these severe limitations assessed by Dr. Boyd.  Accordingly, although reasonable minds might differ, the ALJ provided a legally sufficient basis for why he gave reduced weight to the opinions of Drs. Boyd and Yabes.

In a related argument, plaintiff contends that the ALJ erred in giving greater weight to the opinions of the consultative physicians Drs. Dann, Eskander, and Gross in assessing plaintiff's RFC.  ECF No. 14 at 8-10.  Plaintiff argues that these opinions should not have been given greater weight because these physicians did not have the benefit of considering medical treatment records that were provided to the Social Security Administration after their opinions were rendered 2008.  *Id.* at 8-9.  Plaintiff argues that because the consultative physicians did not have all of plaintiff's medical records, including Dr. Boyd's "detailed . . . analysis of [plaintiff's] history and diagnosis of ODDD," and Dr. Yabes and Boyd's "assessments of limitations," the ALJ should not have given greater weight to their opinions.[4]  *Id.*  As discussed below, however, there is nothing in these additional records that undermines the opinions reached by Drs. Dann, Eskander, and Gross or otherwise suggests that they would have reached different opinions had they reviewed those records.  At the time they issued their opinions, plaintiff's history and diagnosis of ODDD had already been documented.  *See* AR 531, 534.  And as noted, plaintiff's

---

[4] Dr. Boyd's "detailed" discussion of ODDD was for the most part, generic information on the disorder itself.

1    own testimony undermined Dr. Yabes and Boyd's assessments of her functional limitations.  *See*

2    *also id.* at 739 (U.C. David Health System medical records from February 2009 showing full

3    range of motion in neck, normal coordination, normal gait, and good strength with normal tone).

4    In addition, Dr. Gross' opinion that plaintiff remained functional despite her headaches, although

5    dated, was consistent with later findings made in 2009 through the U.C. Davis Health System that

6    plaintiff did not even experience headaches when she was taking Verapamil.  *Id*. at 788.  Thus,

7    despite plaintiff's history of headaches and migraines, later medical records indicate that they

8    could be controlled with medication.

9           Furthermore, as defendant notes, Drs. Dann and Eskander's opinions are supported by

10   other medical and treatment records.  An examination performed by Dr. Yabes on November 2,

11   2006 found that cervical and lumbar range of motion was within normal limits, plaintiff's upper

12   and lower extremity motor strength was 5/5, and straight leg raising testing was negative in the

13   seated and supine position.  *Id*. at 568.  U.C. Davis Health System medical records from February

14   2009 showed similar findings.  Upon examination, plaintiff's strength was 5/5 with normal tone,

15   and plaintiff exhibited a normal gait.  *Id*. at 739.

16          Thus, the ALJ properly relied on the opinions from Drs. Gross, Dann and Eskander, as

17   they were supported by other evidence in the record.  *See* 20 C.F.R. §§ 404.1527(c)(4) ("the more

18   consistent an opinion is with the record as a whole, the more weight we will give to that

19   opinion"); 20 C.F.R. § 404.1513(c) (findings by state agency physicians constitute proper

20   evidence from non-examining sources); SSR 96–6p ("State agency medical . . . consultants are

21   highly qualified physicians . . . who are experts in the evaluation of the medical issues in

22   disability claims."); *Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002) ("opinions of non-

23   treating or non-examining physicians may also serve as substantial evidence when the opinions

24   are consistent with independent clinical findings or other evidence in the record").  For these

25   reasons, there was no error in the ALJ's analysis of the medical evidence.  *See, e.g., Wheaton v.*

26   *Colvin*, No. 2:13-1163-CKD, 2014 WL 794356, at *2 (E.D. Cal. Feb. 27, 2014) (ALJ did not err

27   in relying on opinions of consultative examining internal medicine specialist, even though it pre-

28   dated opinion of treating physician by over three years).

B.      The ALJ Provided Legally Sufficient Reasons for Discrediting Plaintiff's
        Testimony

Plaintiff next argues that the ALJ erred in finding that she was not credible.  ECF No. 14 at 11-15.  In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  *See id*. at 345–47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ observed that plaintiff testified that she was unable to work due to chronic pain symptoms and complications from her migraines and ODDD.  AR 28.  Plaintiff testified that she has daily headaches, pain in her legs, wrists, and hands, and is constantly exhausted.  *Id*. at 52.  She stated that she could only sit up straight for five to ten minutes, and that she cannot lift her head due to migraine pain.  *Id*. at 52, 58.  Plaintiff also testified that she does no lifting around the house.  *Id*. at 64.  She specifically stated that even opening a jar causes her intense pain.  *Id*.

1    The ALJ provided several reasons for why he found that plaintiff's allegations regarding

2    her functional limitations were not fully credible.  As for the descriptions of debilitating migraine

3    headaches, the ALJ discounted the allegations because plaintiff had only received conservative

4    treatment, which effectively controlled her symptoms.  This was not an improper consideration.

5    The Ninth Circuit has held that an ALJ may infer that a claimant's "response to conservative

6    treatment undermines [the claimant's] reports regarding the disabling nature of his pain."

7    *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).  Furthermore, "[i]mpairments that can

8    be controlled effectively with medication are not disabling for the purpose of determining

9    eligibility for" social security benefits.  *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006

10   (9th Cir. 2006).  The ALJ's finding is supported by the record.  In 2008, plaintiff completed a

11   headache questionnaire.  AR 348-49.  Plaintiff indicated that she first started experiencing

12   headaches in the 1990's, and that she experiences daily headaches.  *Id.* at 348.  She also stated

13   that she takes medication for her headaches, which works moderately well for the typical

14   everyday headache, but rarely provides relief for her severe migraines.  *Id.*  However, medical

15   records from August 3, 2009, showed that plaintiff did not experience migraine headaches while

16   taking Verapamil.  *Id.* at 789.  These records specifically stated that plaintiff was migraine free

17   while on Verapamil, and that her migraines returned only after she ran out of this medication.  *Id.*

18   Thus, plaintiff's allegations of debilitating pain during migraines are insufficient to establish

19   disability as the evidence shows that the frequency and severity of her headaches can be

20   controlled with medication.

21    Plaintiff argues that the ALJ erred in finding that she was not credible based on the

22   medical records from August 3, 2009.  ECF No. 14 at 14.  She contends that there was no basis

23   for the ALJ to infer that plaintiff "elected to be uncooperative with her treaters and thus was

24   thereafter responsible for her migraines . . . ."  *Id.*  The ALJ, however, did not discredit plaintiff's

25   testimony for failure to take her migraine medication as prescribed.  Instead, the ALJ reasonably

26   inferred from this evidence, as well as plaintiff's own statements on her headache questionnaire,

27   that plaintiff's headaches could be controlled with conservative treatment.  *Id.* at 28.  While

28   reasonable fact finders might reach different results in assessing credibility, the court may not

1  second-guess the ALJ's reasonable inference. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882
2  (9th Cir. 2006).

3      The ALJ also discounted plaintiff's credibility based on a lack of objective medical
4  findings supporting plaintiff's allegations of debilitating pain. *Id*. at 28.  In regards to plaintiff's
5  migraines, a December 2009 CT scan showed no evidence of acute intracranial hemorrhage, mass
6  effect, or extra axial fluid collection. *Id*. at 799.  The ALJ also noted that plaintiff's allegation
7  that she was unable to do any lifting due to back and wrist pain was also not supported by the
8  objective medical evidence. *Id*. at 28.  Medical records show that plaintiff maintained full motor
9  strength in her upper and lower extremities, range of motion for her cervical and lumbar spine
10 was within normal limits, and straight leg raising test was negative in the seated and supine
11 position. *Id*. at 568.  While an ALJ may not rely solely on a lack of objective medical evidence to
12 support an adverse credibility finding, it is a relevant consideration in assessing credibility. *See*
13 *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan*, at 169 F.3d at 595.

14     The ALJ also found that plaintiff's allegation of disabling impairments was inconsistent
15 with her reported activities of daily living.  As previously discussed, plaintiff testified that she is
16 capable of performing housework, laundry, cooking, and shopping and caring for her children.
17 AR 54-56, 116-117.  Plaintiff's allegations of debilitating pain, including the inability to lift
18 anything around the house, are inconsistent with these reported activities. *Smolen*, 80 F.3d at
19 1284 (ALJ may rely on inconsistent testimony in assessing a claimant's credibility).

20     The ALJ also discredited plaintiff's subjective complaints based on her failure to follow a
21 prescribed course of treatment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding
22 that where a claimant complains of disabling pain but fails to seek treatment, or fails to follow
23 prescribed treatment, an ALJ may use such failure as a basis for finding the complaint unjust or
24 exaggerated).  Medical records from February 2010 reflect that plaintiff's exercise tolerance had
25 diminished significantly. *Id*. at 802.  One of plaintiff's treating physicians recommended plaintiff
26 perform muscle strengthening exercises, which could include therapy in a heated pool. *Id*. at 804.
27 However, as observed by the ALJ, there is no indication that plaintiff ever participated in the
28 recommended therapy.

1        Lastly, the ALJ found that plaintiff's prior work history suggested that she maintained the

2   ability to work. *Id*. at 29.  Plaintiff stated that she has experienced severe migraines since the

3   1990's.  *Id*. at 348.  The record also reflects that plaintiff worked as a flight attendant until 2006,

4   and then worked as an in-home care provider at a substantial gainful level until 2008.  *Id*. at 89,

5   99-102, 108-109.  The ALJ noted that plaintiff's ability to maintain gainful employment

6   notwithstanding her alleged severe headaches demonstrated that such impairment did not

7   preclude past work activity, and inferred from that a current ability to work notwithstanding

8   migraines when properly treated.  *Id*. at 30.  The ALJ was permitted to rely on this evidence in

9   assessing plaintiff's testimony.  *See Lobato v. Astrue*, 2012 WL 5992280, * 9 (C.D. Cal. Nov. 30,

10  2012 ("The ALJ likewise properly inferred from the fact of plaintiff's gainful employment as a

11  janitor for 15 years that, because her alleged mental impairments had not prevented her from

12  working during that time, this suggests that such impairments would not currently render her

13  unable to work.").

14       Plaintiff does not dispute that she was able to maintain substantial gainful employment for

15  many years despite her history of severe headaches.  Plaintiff contends, however, that her most

16  recent work as an in-home care provides does not support the finding that she currently maintains

17  the ability to work.  ECF No. 14 at 16-18.  At the November 18, 2009 hearing, plaintiff testified

18  that she works for the County of Placer as an in-home care provider, providing care to her

19  daughter who suffers from nocturnal frontal lobe epilepsy.[5]  AR 108-09.  She testified that this

20  job simply required plaintiff to be with her daughter at night in case her daughter has a seizure.

21  *Id*. at 109.  In practice, this job only required plaintiff to sleep in the same room as her daughter.

22  *Id*.  Plaintiff notes that this unique job provides little insight into plaintiff's ability to function in

23  the typical work setting.  Nonetheless, plaintiff's argument ignores the fact that she was also able

24  to work as a flight attendant until 2006 notwithstanding her assertion that she has experienced

25  headaches since the 1990's.  The ALJ did not rely solely on plaintiff's work as an in-home care

26  provider in evaluating plaintiff's testimony.  Rather, the ALJ provided several clear and

27

28         [5]  The record reflects that plaintiff continues to work as an in-home care provider for her
daughter, but ceased performing this job at a substantial gainful level in 2008.  AR 99-102.

13

1  convincing reasons for not fully crediting plaintiff's testimony regarding her ability to work.

2  Accordingly, the ALJ did not err in this regard.

3          C.      The ALJ Provided Legally Sufficient Reasons for Rejecting Mr. Costa's

4                  Testimony

5          Plaintiff next argues that the ALJ erred by failing to provide legally sufficient reasons for

6  rejecting the testimony of her husband, Mr. Costa.  ECF No. 14 at 16.  Lay testimony as to a

7  claimant's symptoms is competent evidence that an ALJ must take into account, unless he

8  expressly determines to disregard such testimony and gives reasons germane to each witness for

9  doing so.  *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).  An ALJ must consider this

10  testimony in determining whether a claimant can work.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454

11  F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R. § 416.913(d)(4); *Smolen*, 80 F.3d at 1288.

12  However, in doing so the ALJ is free to evaluate that testimony and determine the appropriate

13  weight it should be given in the light of the other evidence.  To discount the testimony of a lay

14  witness, the ALJ must "give reasons that are germane to each witness." *Id*. at 1053; *see also*

15  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.2009).

16          The ALJ indicated that he gave Mr. Costa's testimony no weight because Mr. Costa is not

17  an acceptable medical source, his opinion is not supported by the record as a whole, and many of

18  the limitations he suggested "are reflection of [plaintiff's] subjective complaints, which are not

19  fully credible."  AR 30.

20          The ALJ's first reason, that Mr. Costa is not "acceptable medical source," is not a legally

21  sufficient basis for rejecting Mr. Costa's testimony.  Mr. Costa did not purport to testify as a

22  medical expert.  He testified as a lay witness.  Thus, while lay witnesses are, by definition, not

23  acceptable medical sources, *see* 20 C.F.R. § 404.1513(d)(4), the Commissioner's regulations, as

24  well as the law of this circuit, require an ALJ to consider lay testimony in reaching a disability

25  determination.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see*

26  *also* 20 C.F.R. § 416.913(d)(4); *Smolen*, 80 F.3d at 1288.

27          Nonetheless, this error was harmless.  The ALJ provided an additional basis for rejecting

28  Mr. Costa's testimony.  The ALJ also found that Mr. Costa's testimony, which corroborated

1  plaintiff's allegations, was not supported by the record as a whole and appeared to be based on

2  plaintiff's subjective complaints.  AR 30.  Mr. Costa's testimony is largely a reflection of

3  plaintiff's descriptions and appears to be premised on her subjective complaints which the ALJ

4  found not to be fully credible.  Thus, the ALJ rejected Mr. Costa's testimony, at least in part, for

5  the same reason that he rejected plaintiff's testimony—that it was not supported by other

6  evidence in the record.  This is a germane reason for not fully crediting Mr. Costa's testimony.

7  S*ee Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and

8  convincing reasons for rejecting [plaintiff's] own subjective complaints, and because [lay

9  witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane

10  reasons for rejecting her testimony.").

11  IV.  <u>CONCLUSION</u>

12       The ALJ applied the proper legal standard and his decision was supported by substantial

13  evidence.  Therefore, it is hereby ORDERED that:

14       1.  Plaintiff's motion for summary judgment is denied;

15       2.  The Commissioner's cross-motion for summary judgment is granted; and

16       3.  The Clerk is directed to enter judgment in the Commissioner's favor.

17  DATED:  March 31, 2014.

18

19  EDMUND F. BRENNAN
    UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

15